May it please the Court, my name is Jaime Hosso. I represent the petitioner in this matter, Mr. Brian Orozco. It's a rare opportunity when I get to present to the Court one issue, and the majority of the facts are not in dispute. So I actually may take my time and speak clearly and slowly. Mr. Orozco is a native and citizen of Mexico. He is married to a U.S. citizen. He is the beneficiary of an approved visa petition. He has two U.S. citizen children, and he's never left the United States since his entry to 1986. In order to obtain a green card here in the United States pursuant to the Immigration and Nationality Act, Section 245A, the individual alien must demonstrate that he's been inspected and admitted. In this case, there is no dispute that he was inspected by an immigration authority. There was no dispute that he was authorized to enter the United States by an immigration authority. What is at dispute is whether or not he made that legal entry pursuant to the Act. When you say he was authorized, he was authorized under a phony green card. That is correct. Mr. Orozco presented a lawful permanent resident card that was not valid, an issue to him. But nonetheless, the immigration authority, the inspecting agent at the port of entry, reviewed the document, confirmed or believed that it was the identity of Mr. Orozco and permitted him to enter the United States. Which shows it was a good forgery, but doesn't show Mr. Orozco was admitted legally. That is exactly what is at issue. And the admission is very much a technical legal term that has to be decided by this court. And what is defined in the statute is admission under Section ---- Has it been decided by this court that admission means lawful admission? What has been decided by this court in Shilberbarman, which the government relies heavily upon, is exactly what the definition is. And give me a minute to explain this. In Shilberbarman, the issue there was whether or not he had multiple admissions. It was no dispute whatsoever that he entered the United States with an F-1 nonimmigrant visa. There was no dispute that he was inspected by an immigration officer. There was no dispute that he was authorized to enter the United States. The question in Shilberbarman was simply whether or not his admission, his first admission with the F-1 visa, or his second admission as contended by the Board of Immigration Appeals applied for removability purposes. Yes, Your Honor. Admission and admitted mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer. Yes, Your Honor. The authorization of this man by the immigration officer was the authorization based on a fraudulent document. Yes, it is nonetheless an authorization by the officer. You've got a case that says that? The authorization by the officer is his actual permission to enter the United States. Case law, I don't have. The officer is thinking that he's admitting A and he's admitting B. There's no authorization of B. And I stand corrected. There, in fact, is a case on point in reference to that. An individual by the name of Ms. Adegian. Ms. Adegian is a case that is held by the Board of Immigration Appeals in 1980. Ms. Adegian had no legal document to enter the United States. In fact, she's very much the equivalent of Mr. Orozco in that they have no ---- No, there's a difference. She didn't make a false claim that she was entitled to lawfully enter. And what the Board of Immigration Appeals directed their analysis on is whether or not she made a false claim to citizenship. What Mr. Orozco did made it much more difficult for him to obtain lawful permanent residency. What he did by using a false document is make him inadmissible to the United States under a different section of the law, which states that any individual that seeks to procure, has procured an admission into the United States fraudulently or by misrepresentation, is inadmissible to the United States and cannot get the green card here in the United States unless the Attorney General has, in fact, forgiven him or pardoned his fraudulent conduct. And that's exactly what has happened in this case. Let's turn to a different part. You're talking about 1255A. Yes, Your Honor. And we read 1255A. And if we apply 1255A, we have to go to 110113A. And that's the exact section of the code that Judge Bea quoted. Let's turn to 1255C-8. 1255C-8 is a part of the code which says that one must, pursuant to that section, that one is an alien who was employed while the alien was an unauthorized alien, as defined in 1324AH, is inappropriate for adjustment, not available to the adjustment. That section says the term means unauthorized alien means, with respect to employment of an alien at a particular time, that the alien is not at that time either an alien lawfully admitted or authorized to be so employed. So if I look at 1255C-8, which seems to be interpreted in the same way as Judge Bea interpreted 1255A, again, I come down to the point there was no lawful entry here, and therefore he's not allowed to adjustment. Two different points. One, in reference to the actual ultimate decision, an immigration judge, as well as the Board of Immigration Appeals, ever dealt with the issue and addressed it firmly, squarely on point, that Your Honor is addressing now in terms of unlawful employment. The issue is simply regarding the lawful entry, as is interpreted under 101A13A. Now, legal entry, and I want to stress this point very carefully, the legal entry at issue is not in reference to the inspection and authorization by the immigration officer. The legal entry, as contended by the government, is in fact whether or not he had lawful documents to enter. As contended by the petitioner in this case, legal entry relates, as it is defined under the admission statute, relates to location and place. Now, when we look to further on in the definition of admission, we realize that a lawful permanent resident of the United States, one who in fact has a green card to enter the United States, can be inspected by an officer, authorized to enter the United States by that officer, but still be held, not admitted to the United States, if that entry into the United States was not at a properly authorized location. So even an individual as a lawful permanent resident, who in fact has a document to enter, can still be held not to be admitted to the United States simply because the location in which he entered was not at a properly authorized port of entry. So the legal entry at the definition of admission relates to time, I'm sorry, location and place, and not in reference to the documents in which the individual possessed. The documents that the alien possessed affects his eligibility for adjustment of status by making him inadmissible for fraudulent use of a document. That needs to be cured in a separate procedure in order to apply for the waiver. It is his legal entry that is at issue, and the legal issue has nothing to do with the inspection authorization, which appears to be uncontested. It is simply whether or not how the court interprets the legal entry in the definition of 101-813-A. Is it relating to using a legal document, or is it relating to more of the location and place of where the individual is entering? What it says when it talks about the definition applied to all terms used in this chapter in which 1255-A is appropriate. The — I think I misunderstood the question. Well, if you look at the definition of 1101-813-A, it suggests that it's applicable to all the terms used in this chapter. In other words, the definition of admission or admitted there is applicable to the whole chapter, which contains 1255-A. And that's why it's also permissible to understand that legal entry relates to location and place, as it's used on 108-813. I believe it's later on down in the subsection. So therefore, the definition is applicable in more than one place, as is intended, and therefore, if I apply the plain language of the statute, your person made an illegal entry, and therefore? No. I respectfully disagree with it, Your Honor. The legal entry deals with the port of entry, whether or not he crossed the border, say, through the mountains or the rivers or what may be. The legal entry relates to is it a proper port of entry, not in reference to the documents that are being used, and it's specifically relating to physical locations. So let me ask you a question. Yes, Your Honor. The I.J. is very sympathetic to your client and, in fact, said that he would have granted discretionary relief had he been able to find that your client was statutory eligible. As a practical matter, what happens next? If we uphold the, I guess we're reviewing, I don't know which one we're reviewing, I.J. or BIA here, is the result that your client is deported or leaves voluntarily because they did grant voluntary departure, and then he can reapply in another 10 years to come in? Is that the? Right. He'll be subject to a 10-year bar rule because of the unlawful presence for over a year. Yes, Your Honor is correct.  A 10-year bar. And what would be the legal basis for him entering lawfully after that 10-year period? It would still be based on the visa petition filed by his U.S. citizen spouse. All right. But he'll just be subject to the 10-year bar rule. But is there any waiver of the 10-year bar rule? Yes, there is a humanitarian waiver of the 10-year bar rule. In practice, Your Honor asked me how it works. In practice, I can represent to this court that there's a certain amount of chaotic occurrence happening in the Ciudad Juarez location where the officers would be adjudicating the waiver as well as the case. In fact, there are no appointments scheduled at this point in time for the humanitarian waivers. There's been a pilot program that started recently, I believe this year, in which the adjudicating officers would accept a humanitarian waiver and try to adjudicate it within one or two days. That pilot program has received a number of applicants, and because of that, there are no appointments whatsoever at this point in time for additional waiver adjudications. I see that my time is almost up. May I reserve any time for rebuttal? All right. Thank you. Thank you. May it please the Court. Alan Hausman, Office of Immigration Litigation, Justice Department, for the Respondent. The argument that the Petitioner has presented in the brief and in summary form before the Court today would exalt form over substance in that in its reliance, in his reliance upon a board decision from 1980, the matter of Arakein, the Board of Immigration Appeals found there was an entry, which is a concept that Congress has now done away with, based upon the presentation of an alien at the border and the officer's decision to allow the alien to pass, to enter into the United States, to physically cross the border and enter. In 1996, Congress amended the Immigration and Nationality Act. It created the concept of removal, eliminating the dichotomy of distinction between deportation and inadmissible aliens, so we have removal proceeding. And in the course of making that change in how the enforcement mechanism operates, it amended the definition section and it eliminated the concept of entry physically coming into the country and introduced the definition of admission or admittance into the country and significantly for this case inserted the word unlawful. And the government submits that the immigration judge made a correct decision, which was affirmed by the Board of Immigration Appeals, and that it's conceded by the Petitioner that when he first arrived, he was a pedestrian, he came up to the officer at our border, he presented a green card, which he had purchased in the city of Tijuana, based upon the fact that he resembled the picture on the card, and he deceived the officer and the officer allowed him to enter into the United States. But it does violence to the definition enacted by Congress, where it said that the admission has to be unlawful coming into the United States to recognize that entry or admission by the alien and to allow him to benefit by receiving a benefit under the Immigration Act. This court in Shivaram, Brahman, at 360 F. 3rd, 1142, made it very plain that where the statutory language is unambiguous, it is the obligation of the agency and the courts to enforce the clear intent of Congress. Congress has inserted the word unlawful in what is clearly a thoughtful way, and that the Petitioner in this case is ineligible for the relief and that the Board's decision should be upheld by the court. Thank you, Your Honors. Thank you. Thank you. Thank you.  The case of Orozco v. Kaiser will be submitted.
judges: Wardlaw, Bea, Smith